E-FILED
Friday, 20 May, 2005  04:43:10 PM
Clerk, U.S. District Court, ILCD

FILED
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
MAY 19 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

LARRY STINCHCOMB,
   Movant,

v.                                        Case No. 01-3-119-001

UNITED STATES OF AMERICA,
   Respondent.

## MOTION TO MODIFY, CORRECT SENTENCE

Comes now movant, Larry Stinchcomb, pro-se, and hereby respectfully requests that this Honorable Court Modify, Correct Sentence, due to supervening change in the law.

The basis for this Court's affirmation has since been held unconstitutional under Blakely v. Washington, -U.S.- 124 S.Ct. 2531, 2561, 159 L.Ed.2d 403, (2004), and United States v. Booker, -U.S.- 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

In light of the recent Supreme Court rulings in Booker and Blakely, a review of this case by this court is defined as justice.

Wherefore, for reasons outlined in the enclosed Memorandum of Law, the movant respectfully requests that this Court review in light of the recent Supreme Court cases.

As a matter of introduction, movant respectfully submits that the events which transpired in the instant case constitute a denial of movant's due process rights, as guaranteed by the 5th Amendment to the U.S. Constitution, the rights to a jury trial as guaranteed by the 6th Amendment, and of facial constitutional challenges related to movant's sentencing. In short, the movant submits that the conviction and sentence in the instant case should be corrected in the light

of these constitutional violations.

The key standard for submitting this memorandum is a supervening change in the law, Movant maintains that the Supreme Court's understanding and recognitions of the application of the 6th Amendment to criminal proceedings, and its recent determination that substantial parties of the Sentencing Reform Act of 1984, (including the mandatory Federal Sentencing Guidelines) are unconstitutional represents just the type of supervening matters that if left unchecked will impose a "demonstrably wrong" and unjust decision for the Movant.

The original conviction and sentence notwithstanding the decision of <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). At that point in time, lower Courts were still missing the proverbial point associated with the High Court's view of the 6th Amendment: any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. However, courts were still misunderstanding what "statutory maxumum" meant and how important in the constitutional formula of checks and balances the Framers saw the institution of the jury.

In the supervening case of <u>Blakely v. Washington</u>, supra:, the Supreme Court held that facts comprising the elements for a crime, including its penalty, must be specifically charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt. The over-arching principle of the <u>Blakely</u> case in that the Framers of this Nation contemplated and constitutionally required a criminal justice paradigm of limited state power (including judicial) accomplished by a strict-division of authority between the prosecutor and Judge on one hand and the jury on another. One of the goals in articulating this principle by the majority was to give "intelligible context" to the "fundamental reservation of power in our constitutional structure". This "constitutional structure", and most notably the protections of the 6th Amendment, were first addressed by

(2)

National Courts in 1784, over 221 years ago and prior to the adoption of the "Bill of Rights". In referencing the protections later to be immortalized in the 6th Amendment. The Supreme Court of Pennsylvania stated in Respulbica v. Doan, 1 U.S. 86, 1 Dall. 86, 1 L Ed 47 (Pennsylvania 1784), that courts must be of the utmost care when there is a criminal accusation.

Throughout the entire history of the 6th Amendment protections of such rights emanating from the people, the Supreme Court has addressed the sanctity and substantiveness of these rights, While the nuances of the cases may have varied, the key principles have not. It is, though, these key principles that were neglected in this Movant's case.

Over the past 7 years, the Supreme Court has sought to regain the High gound of original intent of the 6th Amendment by adopting such opinions as Almendarez-Torres v. U.S., 523 U.S. 224 (1998), Jones v. U.S., 526 U.S. 227 (1999), Apprendi v. New Jersey, 530 U.S. 466 (2001), Ring v. Arizona, 536 U.S. 584 (2002), Harris v. U.S., 536 U.S. 545 (2002), and now Blakely & Booker, in which the directives of Booker and 3553(a) make clear that courts may no longer uncritically apply the guidelines. U.S. Ranum, 2005 WL 165314.

The original conviction was clear and concise. However, when each statement of current law is reviewed in light of Blakely and Booker, a contrary decision by this Court must be met.

I. Movant argues that the sentence yiolated the constitutional rights Apprendi. Specifically, Movant contends that the additional level enhancement that was not set forth in the indictment or proven beyond a reasonable doubt and this unconstitutionally increased the sentence.

The Supreme Court held in Apprendi, that the constitution requires that any fact that increases the penalty of a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction must be submitted to the

jury and proved beyond a reasonable doubt. <u>120 S Ct at 2362-63</u> - citing a string of previous circuit cases, this Court held that <u>Apprendi</u> does not apply to a judge's exercise of sentencing discretion within a statutory range as long as a defendant's sentence is not set beyond the maximum term specified in the substantive statute.

This position has been reversed by <u>Blakely</u>. Writing for the majority; Justice Scalia stated: "...the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment" [citation omitted] and the judge exceeds his proper authority.

The enhancement previously held as proper,is now clearly an improper enhancement in light of the Supreme Court's clarification of its meaning.

When Congress first established the current sentencing guidelines, the United States Supreme Court held that the guidelines to be constitutional based upon a discussion and recognition of the doctrine of separation of powers. In <u>Mistretta v. United States</u>, 488 U.S. 361, 109 S Ct 647, 102 L Ed 2d 714 (1989), the Supreme Court first reviewed the constitutionality and propriety of the federal sentencing guidelines as proposed in the Sentencing Reform Act of 1984. Ultimately, Justice Blackman, writing for all the Justices except for Justice Scalia who dissented, opined that the subject of criminal punishments was one not constitutionally mandated to anyone of the branches of the government. Instead, it was noted, Congress had waxed towards a "three-way sharing" of sentencing responsibility. Under the indeterminate-sentence system created in 1984, Congress defined the maximum punishments for certain crimes, the judge imposes a sentence

within the statutory range (which he usually could replace with probation), and the Executive branch's parole official eventually determines the actual duration of imprisonment. See <u>Williams v. New York</u>, 337 U.S. 241, 248 (1949). See also <u>Geraghty v. United States Parole Commission</u>, 719 F.2d 1199, 1211 (CA3, 1983), cert. denied, 465 U.S. 1103 (1984); <u>United States v. Addonizio</u>, 442 U.S. I78, 190 (1979); <u>United States v. Brown</u>, 381 U.S. 437, 443 (1965), ("[I]f a given policy can be implemented only by a combination of legislative enactment, judicial application, and executive implementation, no man or group of men will be able to impose its unchecked will"). It was based upon this balanced approach and respect to the separation of powers that the Court held the guidelines constitutional.[3] Matters now have changed.

Over the past several years, Congress has moved past this intelligible principle test. Ultimately now, Congress has taken over the judiciary's role in the sharing of delegated authority in determining the punishments for crimes. In passing the so called Feeney Amendment, 28 U.S.C.S. §§ 994(w), requiring the Sentencing Commission to periodically provide general sentencing reports to Congress, and individual presentence reports were not included in these reports. The Feeney Amendment, enacted pursuant to the Protect Act, modified the reporting provisions of 28 U.S.C.S. §§ 994(w). Under the amended 28 U.S.C.S. §§ 994(w), the Chief Judge in each District <u>must</u> submit to the Sentencing Commission "a written report of the sentence, the offense for which it is imposed, the age, race,

---

[3] Chief Justice Taft, writing for the Court, explained the approach to cooperative ventures between the branches of government: "In determining what [Congress] may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the government co-ordination." <u>J.W. Hampton Jr. & Co. v. United States</u>, 276 U.S. 394, 406 (1928). So long as Congress "shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise delegated authority] is directed to conform, such legislative action in not a forbidden delegation of legislative power." Id. at 409.

sex of the offender, and information regarding factors made relevant by the guidelines. The report shall also include the presentence report, 28 U.S.C.S. §§ 994(w)(1). Furthermore, 28 U.S.C.S. §§ 994(w)(2) provides that the Sentencing Commission shall, upon request, make available to the House and Senate Committees on the Judiciary, the written reports and all underlying records accompanying those reports. With such legislation, no Federal Judge can impose a sentence above or below the Congressional "guidelines" without imposing serious review by what was a co-equal branch of the Federal government. This chilling legislation of a free judiciary has moved the Sentencing Guidelines from being a constitutional exercise of government goals to an unconstitutional aggregation of power in only one branch.

Appellant's sentence, applied under this heavy burden of the Federal Sentencing Guidelines, violated the standards and principles of due process embodied in the Federal Constitution and must be corrected. As the dissent stated in <u>Blakely v. Washington</u>, 124 S Ct 2531, 2561, 159 L Ed 2d 403 (2004);

> "Congress and the States relied upon what they believed was their constitutional power to decide, within broad limits, whether to make a particular fact **(a)** a sentencing factor or **(b)** an element in a greater crime. They relied upon McMillan as guaranteeing the constitutional validity of the proposition. They created sentencing reform, an effort to change the criminal justice system so that it reflects systematically not simply upon guilt or innocence but also upon what should be done about this now-guilty offender. Those efforts have spanned a generation. They have led to state sentencing guidelines and the Federal Sentencing Guidelines system, E.g., ante, at ____-____, 159, L Ed 2d at 420-421 (O'Conner J. dissenting) (describing sentencing reform in the State of Washington) Those systems are imperfect and they yield far from perfect results..."

That these mandatorily applied guidelines were unconstitutional as applied has now been confirmed by the Supreme Court in Booker[4].

(6)

This fact, that the federal sentencing guidelines were unconstitutionally permitting defendant's to be sentenced far in excess of the actual crimes charged has been clear, although largely ignored throughout several opinions of the Supreme Court. See generally, Jones v. U.S., 526 U.S. 227, 119 S Ct 1215, 143 L Ed 2d 311 (1999); Apprendi v. New Jersey, 530 U.S. 466, 120 S Ct 2348, 147 L ED 2d 435 (2000); and Ring v. Arizona, 536 U.S. 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002).

The Supreme Court's pronouncement in Booker has clarified the position of the Sixth Amendment though its holding, quoting Justice Stevens, is not one of new constitutional law.

> "More important than the language used in our holding in Apprendi are the principles we sought to vindicate. Those principles are unquestionably applicable to the Guidelines. They are not the product of recent innovations in our jurisprudence, but rather have their genesis in the ideals our constitutional tradition assimilited from the common law."

Those individuals who have been convicted and sentenced under the guideline scheme, and without due process of law, are entitled to the protections of the

---

> "We answer the question at remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. § 3553(b)(1) (Supp. 2004), incompatable with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section, § 3742(e) (main ed., and Supp. 2004), which depends upon the Guidelines mandatory nature. So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et. seq., 28 U.S.C. § 991 et. seq., makes the Guidelines effectively adivsory. It requires a sentencing court to consider Guideline ranges, see 18 U.S.C.A. § 3553(a)(4)(Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp. 2004)." Booker at 756-57.

United States Constitution and should have the convictions and sentences immediately vacated.

Certainly the Government will stand in the way of a proper application of due process, and claim Booker has not been declared retroactive, and does not meet the standard for retroactivity. This argument is inherently false, misleading, and fundamentally inappropriate to our sense of fairness and integrity in our criminal justice system. As the Apprendi court reminded all;

> "[T]he historical foundation for our recognition of these principles extends down centuries into the common law. '[T]o guard against a spirit of oppression and tyranny on the part of rulers,'and' as the great bulwark of [our] civil and political liberties,' trial by jury has been understood to require that the truth of every accusation, whether preferred in the shape of indictment, in forming an appeal, should afterwards be confirmed by the unanimous suffrage of 12 of the defendant's equal, and neighbors... 530 U.S. at 477."

In conclusion, wherefore, in consideration of the foregoing, the Appellant prays this Court to review and correct sentence due to errors Constitutional magnitude outlined here in and the supervening law, fundamental justice demands nothing less when the 6th Amendment is concerned.

But the interests and reliability protected by the right to a jury trial-- a common law right that defendant's enjoyed for centuries and that is now enshrined in the 6th Amendment and has always outweighed the interest in concluding trials swiftly. Blakely 540 U.S. at ---, 124 S Ct at 2542-43. As Judge Blackstone put it;

> "However convenient these (new methods of trial) may appear at first (as doubtless all arbitrary powers, well executed, are the most convenient) yet let it be again remembered, that delays, and little inconveniences in the forms of justice, are the price that all free nations must pay for their liberty in more substantial matters that

these inroads upon this sacred bulwark of the nation are fundamentally opposite to the spirit of our Constitution, and that, though begun trifles, the precedent may gradually increase and spread to the utter disuse of jurie of questions of the most momentous concerns."[4] Commentaries on the Laws of Right. 343-344 (1769).

Justice, respect for the law, and fidelity to the supervening cases of the U.S. Supreme Court suggests the the Appllant's conviction and sentence be corrected.

Date: _____                           Respectfully Submitted;

                                                _____
                                                Larry Stinchcomb
                                                Reg. No. 53340-019
                                                P.O. Box 4000
                                                Manchester, KY 40962-4000

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing has been sent to the below listed parties, first class United States postage pre-paid, by placing same into the institution legal mail system here at F.C.I. Manchester, Kentucky, on this _____ day of _____, 2005.


Assistant U.S. Attorney

```
                                    Larry Stinchcomb
                                    Reg. No. 53340-019
                                    P.O. Box 4000
                                    Manchester, KY 40962-4000
```